**Lakshmi Vanderwerf**, Bar No. 17336
**Mary Anne Davies**, Bar No. 14965
DISABILITY LAW CENTER
960 S Main Street
Salt Lake City, Utah 84101
Phone: (801) 363-1347
lvanderwerf@disabilitylawcenter.org
mdavies@disabilitylawcenter.org

*Attorneys for the Plaintiff*

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **JORDAN MOWER**<br><br>Plaintiff,<br><br>vs.<br><br>**AUTOZONERS LLC,**<br><br>Defendant. | **COMPLAINT**<br>**JURY DEMANDED**<br><br>Case No. 2:23-cv-00597-BSJ<br>Judge Bruce S. Jenkins |

Plaintiff Jordan Mower ("Mr. Mower" or "Plaintiff"), by and through his attorneys hereby complains and alleges against Defendant AutoZoners, LLC ("AutoZone" or "Defendant"), as follows:

### PRELIMINARY STATEMENT

1. This Complaint is a civil action brought under the Americans with Disabilities Amendments Act as Amended in 2008, codified at 42 U.S.C. §§ 12101 *et seq*. ("ADA-AA" or "ADA"), for disability discrimination and retaliation. Mr. Mower seeks injunctive relief prohibiting Defendant from continuing its misconduct in violation of the

ADA and prohibiting Defendant from engaging in similar misconduct in the future. Mr. Mower seeks monetary relief as compensation for Defendant's violation of his rights under the ADA pursuant to 42 U.S.C. § 12188. Mr. Mower seeks attorney fees and court costs pursuant to 42 U.S.C. § 12205.

## PARTIES

2. Mr. Mower is an individual residing in Salt Lake County, Utah. Mr. Mower resided in Salt Lake County, Utah at all relevant times.

3. Defendant AutoZone is a Tennessee Limited Liability Corporation. AutoZone is a retailer of automotive parts and accessories.

4. Defendant AutoZone conducts business in the State of Utah, including at Store # 864, located at 55 North 900 West, Salt Lake City, UT, 84116.

5. At all relevant times, AutoZone continuously employed at least fifteen employees.

## JURISDICTION AND VENUE

6. Mr. Mower has exhausted administrative remedies, and now seeks relief in Federal Court.

7. After submitting a timely Charge of discrimination with the Equal Employment Opportunity Commission, Mr. Mower received Notice of a Right to Sue via the EEOC's electronic portal on June 9, 2023.

8. This Court has subject matter jurisdiction to hear and decide Mr. Mower's claims pursuant to 28 U.S.C. § 1331 and the ADA-AA, 42 U.S.C. §§ 12101 through 12213.

9. This Court has personal jurisdiction over the Defendant because the Defendant conducts business in the State of Utah.

**COMPLAINT**
PAGE | **2**

10. This Court is the appropriate venue for this action pursuant to 28 U.S.C. §§ 1391(b)(2) as the events giving rise to this action occurred within the District of Utah, Central Division.

## STATEMENT OF FACTS

11. Mr. Mower applied for a job as a Sales Representative with AutoZone in approximately the summer of 2020.

12. On or about August 12, 2020, an AutoZone Human Resource Generalist, Jeff Ughetto ("Mr. Ughetto"), interviewed Mr. Mower for the position.

13. During the interview, Mr. Mower discussed his disabilities including anxiety, depression, panic attacks and irritable bowel syndrome.

14. Mr. Mower disclosed that in rare circumstances he can lose consciousness due to extreme panic attacks. Mr. Mower explained that in these rare circumstances most of his extreme panic attacks occur in the morning and would not interfere with work.

15. Mr. Mower also broached the subject of reasonable accommodations with Mr. Ughetto. Mr. Ughetto indicated it would not be a problem for AutoZone to provide Mr. Mower with accommodations.

16. Mr. Mower raised the idea of working afternoon shifts because his anxiety was higher in the morning and Mr. Ughetto agreed that an afternoon shift would be possible.

17. During the interview, Mr. Ughetto offered Mr. Mower the sales associate position and Mr. Mower accepted. Mr. Ughetto told Mr. Mower he would receive hiring paperwork via email.

18. On or about August 13, 2020, Mr. Mower received the hiring paperwork which he completed and returned to AutoZone.

**COMPLAINT**
PAGE | **3**

19. Mr. Mower met with Sergio Santiago ("Mr. Santiago"), the Store Manager for AutoZone Store #846. Mr. Santiago and Mr. Mower agreed he would work two five-hour evening/afternoon shifts per week.

20. Mr. Santiago instructed Mr. Mower to purchase a red golf shirt out of pocket to wear during his shifts which Mr. Mower complied with.

21. Mr. Mower disclosed his disabilities including anxiety, depression, and irritable bowel syndrome to Mr. Santiago. Mr. Mower told Mr. Santiago he would need reasonable accommodation for his disabilities.

22. Mr. Mower observed that Mr. Santiago's demeanor visibly changed after he requested reasonable accommodations.

23. Mr. Santiago told Mr. Mower to provide a doctor's note and directed Ms. Mower to contact Chris Cantor with AutoZone's human resources department to request reasonable accommodations.

24. Mr. Santigo also told Mr. Mower that he could not work until a decision was made about his reasonable accommodation requests.

25. Mr. Mower tried contacting Mr. Cantor to request reasonable accommodations but received no response after leaving several messages.

26. Without a response from Mr. Cantor, Mr. Mower tried contacting Mr. Santigo but he was also non-responsive.

27. On or about September 1, 2020, without a response from Mr. Cantor or Mr. Santiago, Mr. Mower reached out to inform Mr. Ughetto that he was unable to get in touch with human resources regarding his reasonable accommodations and was concerned about the delay

**COMPLAINT**
PAGE | **4**

to starting his employment.

28. Mr. Ughetto appeared to forget Mr. Mower's need for accommodations because he advised Mr. Mower that he did not need to speak to Human Resources. Mr. Mower reminded Mr. Ughetto that he required reasonable accommodation for his disabilities and Mr. Ughetto recalled that Mr. Mower's disability interfered with his sleep.

29. Mr. Mower was able to reach Mr. Cantor after being provided with a direct line by Mr Ughetto. Mr. Cantor instructed Mr. Mower to provide AutoZone with a doctor's note that addressed his disabilities.

30. During September, Mr. Mower provided Mr. Santiago with paper copies of two letters from his providers, to verify his need for reasonable accommodation.

31. The letter dated September 16, 2020, from his mental health provider, Lynn B. Pearson, ACMH, stated that Mr. Mower's anxiety and depression are accompanied by extreme panic attacks that cause him to lose consciousness.

32. The letter dated September 11, 2020, from his medical provider, Clinton Sheffield, MD, verified Mr. Mower's irritable bowel syndrome and associated bathroom use.

33. Santiago assured Mr. Mower that these would be forwarded to human resources and that Mr. Mower should check back with him regarding accommodation decisions.

34. Mr. Mower continuously checked back with Mr. Santiago but did not receive an update on a decision.

35. In October of 2020, Mr. Mower contacted Mr. Cantor and was told that no medical documentation had been received from Mr. Santiago and he was unaware of what accommodations Mr. Mower needed.

**COMPLAINT**

36. Mr. Ughetto followed up with Mr. Mower and requested they speak before submitting Mr. Mower's reasonable accommodation requests for approval.

37. On or about October 26, 2020, Mr. Ughetto spoke with Mr. Mower and asked in depth hypothetical questions about Mr. Mower's disabilities.

38. During that conversation, Mr. Mower explained that on particularly stressful days, he may need to use the restroom 3 times for 10-20 minutes each due to his irritable bowel syndrome.

39. Mr. Mower explained a second time to Mr. Ughetto that when he experiences a high level of stress, he can lose consciousness. Mr. Mower stated that he experiences symptoms prior to the onset of the loss of consciousness which allows him to lay down beforehand.

40. Mr. Mower stated that he had only lost consciousness at work once, for approximately three to five minutes. Mr. Mower was able to sit down at a table and rest his head on the table prior to losing consciousness.

41. Mr. Mower told Mr. Ughetto that these episodes most often occur at home and that he can lose consciousness for three to six hours. This could prevent Mr. Mower from calling a manager prior to the start of his shift. Mr. Mower explained that he would call in as soon as he regained consciousness to let his manager know his absence was due to loss of consciousness.

42. Mr. Mower also provided copies of the two letters from his providers, which were previously provided to Mr. Santiago.

43. Mr. Ughetto documented that these episodes occurred approximately once every six months.

**COMPLAINT**
PAGE | **6**

44. Mr. Ughetto then asked Mr. Mower hypothetical questions such as what would happen if Mr. Mower lost consciousness on a ladder.

45. Mr. Mower responded that such an instance would not occur, because he experienced these episodes at home and not at work but Mr. Ughetto continued to ask "but what if it did happen?"

46. Mr. Mower requested three accommodations during the meeting with Mr. Ughetto which included (1) afternoon shifts, (2) extended bathroom breaks, and (3) an excused absence if Mr. Mower experienced a loss of consciousness.

47. Mr. Mower was informed that he would begin training on Monday November 2, 2020.

48. On or about November 3, 2020, Mr. Ughetto called Mr. Mower and denied his reasonable accommodations requests because AutoZone had determined that Mr. Mower's medical condition would prevent him from being able to work a full shift and maintain regular attendance.

49. Mr. Ughetto then terminated Mr. Mower's employment and cited the denial of reasonable accommodations as the reason for termination.

50. From August to November of 2020, Mr. Mower was not assigned a single shift at AutoZone but because he believed he was employed Mr. Mower did not pursue other job opportunities.

**FIRST CLAIM FOR RELIEF**

**Failure to Provide Reasonable Accommodation in Violation of the ADA, 42 U.S.C. § 12112(b)(5)(A).**

Mr. Mower incorporates by reference all allegations made in previous paragraphs, and further alleges as follows:

51. Mr. Mower is a person with a disability as defined by the ADA, 42 U.S.C. § 12102.

52. Mr. Mower was qualified to perform the essential functions of a sales representative.

53. AutoZone was aware of Mr. Mower's disabilities because he disclosed them to Mr. Ughetto, to Mr. Santiago, to Mr. Cantor, and provided documentation of his disabilities from his care providers.

54. Mr. Mower requested reasonable accommodation of his disabilities, including bathroom breaks, afternoon/evening shifts, and occasional excused absences from work in the event that he lost consciousness immediately before or during a shift.

55. AutoZone unnecessarily delayed Mr. Mower's request for reasonable accommodation when Mr. Santiago did not turn over Mr. Mower's notes to human resources.

56. AutoZone explicitly denied Mr. Mower's requested reasonable accommodations of his disability.

57. AutoZone offered no alternative reasonable accommodations.

**SECOND CLAIM FOR RELIEF**

**Retaliation for Engaging in Protected Activity in Violation of the ADA, 42 U.S.C. § 12203.**

Mr. Mower incorporates by reference all allegations made in previous paragraphs, and further alleges as follows:

58. Mr. Mower engaged in a statutorily protected activity when he requested reasonable accommodations of his disability from Defendant AutoZone.

59. Mr. Mower was terminated from his employment explicitly because of his request for reasonable accommodation of his disability. A causal relationship exists between Mr. Mower's termination and his request for reasonable accommodation.

60. The only reason AutoZone gave for Mr. Mower's termination was AutoZone's purported inability to make those reasonable accommodations.

61. Defendant's unlawful acts were done with malice or reckless indifference to Mr. Mower's rights.

### THIRD CLAIM FOR RELIEF

**Disparate Treatment (Wrongful Termination) in Violation of the ADA, 42 U.S.C. § 12112**.

Mr. Mower incorporates by reference all allegations made in previous paragraphs, and further alleges as follows:

62. Mr. Mower is a person with a disability as defined by the ADA, 42 U.S.C. § 12102.

63. Mr. Mower was qualified to perform the essential functions of a sales representative.

64. Defendant was aware of Mr. Mower's disabilities.

65. Mr. Mower was terminated from his employment because of his disabilities.

66. Mr. Mower was informed that AutoZone would not accommodate his disabilities and that was the reason for his termination in the November 3, 2020, phone call.

67. Defendant's unlawful acts were done with malice or reckless indifference to Mr. Mower's rights.

**COMPLAINT**
PAGE | **9**

**REQUESTED RELIEF**

Wherefore, Plaintiff Mr. Mower requests that this Court:

1. Enter a permanent injunction enjoining Defendant from engaging in employment practices that discriminate on the basis of disability or retaliate against employees for engaging in protected activity;

2. Enter an order requiring Defendant to make Mr. Mower whole by placing Mr. Mower in the position he would have occupied in the absence of discrimination, including back-pay, front-pay, interest, and other benefits that would have accrued;

3. Enter an order requiring Defendant to pay compensatory and punitive damages;

4. Award Mr. Mower his reasonable attorney's fees and costs, pursuant to 42 U.S.C. §12205; and

5. Award other further relief as the interests of justice require.

**DEMAND FOR A JURY TRIAL**

Plaintiff, Mr. Mower, hereby requests a jury trial on all issues so triable.

RESPECTFULLY SUBMITTED this the FIRST day of September, 2023.

DISABILITY LAW CENTER

By */s/ Lakshmi Vanderwerf*
Lakshmi Vanderwerf
Mary Anne Davies

*Attorneys for Plaintiff*

**COMPLAINT**
PAGE | **10**